UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE HOBBS, | CASE NO.   SACV 03-141-MAN |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JOANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration, | |
| Defendant. | |

Plaintiff filed a complaint on February 10, 2003, seeking review of the decision of the Social Security Commissioner ("Commissioner"), denying her disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On March 3, 2003, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on March 3, 2004, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for the payment of benefits or, alternatively, for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on April 26, 2000. (Administrative Record ("A.R.") 98-100.) Plaintiff claims to have been disabled since March 24, 2000, due to degenerative lumbar and cervical disc disease with severe stenosis. (A.R. 98, 105, 17.) She has relevant work experience as a credit clerk, hospital admitting clerk, and collections credit manager. (A.R. 17.)

The Commissioner initially denied Plaintiff's claim for benefits. (A.R. 79-82.) On November 6, 2001, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Edward Steinman ("ALJ"). (A.R. 29-76.) The ALJ affirmed the denial of benefits, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 16-23, 4-5.)

**FACTUAL BACKGROUND**

**A.    Plaintiff's Medical Evidence**

As support for her claimed impairments, Plaintiff submitted medical records from her treating physicians and several consultative examiners. These include records from Kaiser Permanente, where Plaintiff received treatment for her claimed impairments, from September 1999 to July 2000. (A.R. 149-76.)

1    In a report dated July 26, 2000, Dr. Joseph Shapiro, a physician at

2   Kaiser Permanente, stated that he first treated Plaintiff in 1993, and

3   he has treated her off and on since that time.  (A.R. 186.)  In this

4   report, Dr. Shapiro concluded:

5

6       [Plaintiff] has had evidence of severe neck and lower back

7       pain that has been off and on for a number of years and [is]

8       substantiated by MRI findings of the cervical spine in the

9       past and current radiographic imaging studies this year.  She

10      has had only transient and mild benefit with pain medication.

11      She is unable to sit very long, unable to walk very long and

12      unable to perform most activities that one would consider

13      reasonable for a person of this age.  I doubt that she is able

14      to be gainfully employed because of her chronic back and neck

15      pain. [Plaintiff is] unlikely in the future to be able to

16      carry or lift any reasonable amount of objects, certainly

17      anything over 10 pounds, I would say she is unlikely to be

18      able to carry for more than a few minutes.  Lifting certainly

19      will be a problem.  As far as turning, twisting, and grabbing,

20      I think also will be somewhat limited.  I doubt if she will be

21      able to work at a computer screen because of her chronic neck

22      pain.  I doubt that she will be able to work full time in any

23      job that requires repetitive movements.  I doubt that she will

24      be able to sit for very long comfortably at a desk if she had

25      an office type job that was principally sedentary.  I do not

26      think she is a malingerer.   I do not see any major

27      psychological factors that are causing or aggravating her

28
                                    3

1    current problems.   Therefore,   I   think   her   degenerative

2    arthritis and symptomatology with neck and lower back pain is

3    unlikely to improve in the future and I would consider her to

4    be   disabled,   unable   to   work   at   this   time   and   in   the

5    foreseeable future.

6

7  (A.R. 188.)

8

9      In  a  January  31,  2001  report,  Dr.  Shapiro  again  examined  and

10  provided the following limitations:

11

12    [Plaintiff] can lift on occasion from 0 to 10 pounds but in

13    all  reality  will  not  be  able  to  lift  more  than  that  on

14    anything but a rare occasion.   Likewise, [Plaintiff] will be

15    able to carry from 0 to 10 pounds occasionally but in reality

16    it  is  unlikely  she  can  [carry]  more  than  that  for  any

17    sustained period of time. . . .   [She] should avoid pushing,

18    pulling, kneeling, bending and stooping and certainly should

19    avoid heights because she may [lose] her balance because of

20    pain.   As  far  [as]  using  the  upper  extremities  for  fine

21    manipulation,  there  would  likely  be  some  limitations  if

22    shoulder movements were required.   Overhead reaching should be

23    avoided except on a very occasional basis.

24

25      .     .     .     .

26

27

28

                                4

I doubt that she would be able to function in a competitive work environment because of her chronic neck and backache.

.    .    .    .

I would think that it would be difficult for her to maintain a single position, whether seated or standing, for very long, that is, more than 45 minutes at the most[.]

(A.R. 190-91.)

In a March 8, 2001 Multiple Impairments Questionnaire, Dr. Shapiro noted that Plaintiff could lift and carry up to 10 pounds occasionally, and would have "trouble with overhead reaching" and "repetitive" movements. (A.R. 195.) Her grasping, turning, and twisting was "moderately" limited on the right side and "minimally" limited on the left side; her ability to perform fine manipulations was "moderately" limited on the right side and "minimally" limited on the left side; and her ability to reach was "markedly" limited on the right side and "moderately" limited on the left side. (A.R. 195-96.) She would need to take a break every 45 minutes. (A.R. 197.) She should be precluded from pushing, pulling, kneeling, bending and stooping. (A.R. 198.)

On October 26, 2001, Dr. Shapiro examined Plaintiff again, and provided an updated report. He stated that "[t]he physical examination is unchanged from prior evaluations." (A.R. 236.) He further noted that, based on Plaintiff's complaints of worse pain in her neck, "I

consider her condition clearly to be of a static to a slightly worse nature." (*Id.*)

Plaintiff also submitted medical testing pertaining to her claimed impairments. (A.R. 219 -- June 18, 2001 x-ray of right knee showing that "[j]oint space is slightly narrow," but that "[n]o other abnormality is identified" and "[n]o fluid is detected in suprapatellar bursa"; A.R. 169 -- September 21, 1999 x-ray of left knee showing "[s]light narrowing of the medial joint compartment," which is "suggestive of mild osteoarthritis"; A.R. 170 -- March 24, 2000 x-ray of the lumbar spine compared with a November 10, 1994 lumbar spine x-ray and an August 31, 1994 cervical spine film, showing that:  "[t]here is loss of the normal cervical lordosis"; "[there is] disc space narrowing and osteophyte formation at C4-C5, C5-6 and C6-C7 consistent with mild degenerative change[, which is] slightly worse when compared to the prior x-ray"; and "[e]valuation of the lumbar spine demonstrates diffuse disc space narrowing osteophyte formation consistent with mild degenerative change which is slightly worse when compared to the prior x-ray"; A.R. 252 -- December 2, 1994 MRI of the cervical spine showing "[s]evere degree of spinal stenosis from the C3-4 through the C6-7 levels . . . secondary to degenerative changes" and "[a] small disc herniation projecting posteriorly off midline to the left at the C6-7 level may be present"; A.R. 253 -- December 2, 1994 MRI of the lumbar spine showing "posterior disc herniation.")

On October 29, 2001, Dr. Humberto Galleno, an orthopedic surgeon who examined Plaintiff at the request of her attorney, diagnosed

Plaintiff with:  1) cervical spine degenerative disc syndrome with associated severe spondylostenosis from C3 through C7; 2) status post lumbar laminectomy in 1981; 3) lumbar degenerative disc syndrome with recurrent disc protrusion; and 4) lumbar radiculitis - left lumbar radiculopathy.  (A.R. 226.)  Dr. Galleno also noted that Plaintiff "is unable to be gainfully employed or compete in the open labor market due to her chronic disabling lower back pain and neck condition" and is "permanently and totally disabled."  (*Id.*)  He further noted that Plaintiff "is unable to do any lifting, carrying or pushing over 5 lbs."; "[s]he is unable to do prolonged walking, standing or sitting greater than 30 minutes at a time"; "[s]he must have the liberty to stand and/or walk on an as needed basis"; "[s]he is unable to do any bending, stooping, climbing, kneeling or squatting"; "[i]t would be very difficult for her to do any sedentary work activities as she is unable to maintain her neck and lower back in a stable position for more than 30 minutes at a time."  (*Id.*)  In an October 29, 2001 Multiple Impairments Questionnaire, Dr. Galleno found that Plaintiff had the following limitations:  sitting two to three hours in an eight-hour day; standing and walking one to two hours in an eight hour day; lifting and carrying up to ten pounds occasionally; and avoiding repetitive reaching, handling, and fingering.  (A.R. 227-34.)

In a June 20, 2000 Physical Residual Functional Capacity Assessment, a state agency physician, whose identity is unclear, noted that Plaintiff could perform "light" work, with further postural limitations of standing and/or walking "about 6 hours in an 8-hour workday," and was "occasionally" limited in her ability to climb,

balance, stoop, kneel, crouch, and crawl.  (A.R.  177-84.)  In a September 8, 2000 Physical Residual Functional Capacity Assessment, another state agency physician, whose identity is unclear, noted the same limitations, except this physician noted that Plaintiff was "frequently" limited in her ability to climb, balance, stoop, kneel, crouch, and crawl.  (A.R. 200-07.)

### B.   Hearing And Findings Of The ALJ

At the November 6, 2001 hearing, the ALJ sought testimony from Plaintiff regarding her claimed impairments.  The ALJ also sought testimony from Dr. Walter Doren, a non-examining medical expert and internist, and from Heidi Paul, a vocational expert. (A.R. 29-76.) Dr. Doren testified that Plaintiff could:  lift and carry ten pounds; stand up to 45 minutes to an hour for a total of four hours in an eight-hour day; sit for six out of eight hours with the need to change position after an hour; could not climb ladders, ropes, or scaffolds or crawl; and could occasionally climb ramps or stairs, stoop, crouch, kneel, and reach overhead.  (A.R. 19, 55-57.)

On January 18, 2002, Dr. Doren provided an updated medical report regarding Plaintiff's impairments based on his review of the additional evidence.  He found that Plaintiff's impairments consisted of "cervical spinal stenosis, multilevel," and "probable facet arthritis of the LS spine," which caused chronic lower back pain.  (A.R. 256.)  Dr. Doren further found that some, but not all, of Plaintiff's subjective complaints were supported by the medical evidence; specifically, he

1  noted that "the MRI evidence of cervical spinal stenosis supports the

2  [cervical] spine [range of motion] loss and associated pain since

3  mutlilevels are involved."  (A.R. 258-59.)  He further noted that

4  another MRI of the lumbar spine "could better define [lumbar spine]

5  spine facet disease and verify pathology," but stated that Plaintiff's

6  lumbar pain could be residual back pain from the previous 1981 surgery.

7  Dr. Doren also noted that the May 4, 2000 Kaiser treatment notes

8  indicating disc space narrowing and disc degeneration suggest conditions

9  that could account for Plaintiff's lower lumbar pain.  (A.R. 259.)  In

10 a January 18, 2002 Medical Source Statement, Dr. Doren found that

11 Plaintiff had the residual functional capacity to perform "sedentary"

12 work, and found further postural limitations than in the residual

13 functional capacity he provided at the hearing.[1]  (A.R. 260-63.)

14 Specifically, in his updated report, Dr. Doren concluded that Plaintiff

15 can: stand/walk for a total of two hours a day and sit *less than* about

16 six hours in an eight-hour workday with the need to periodically

17 alternate sitting and standing.  (A.R. 260-61.)

18

19   In his April 23, 2002 written decision, the ALJ found that

20 Plaintiff had not engaged in substantial gainful activity since the

21 onset of her disability.  (A.R. 22.)  He found that Plaintiff has

22 "severe" cervical spinal stenosis and facet arthritis of the lumbar

23

24      [1]  "Sedentary work" involves "lifting no more than 10 pounds at

25 a time and occasionally lifting or carrying articles like docket files,
   ledgers, and small tools.  Although a sedentary job is defined as one

26 which involves sitting, a certain amount of walking and standing is
   often necessary in carrying out job duties.  Jobs are sedentary if

27 walking and standing are required occasionally and other sedentary
   criteria are met." 20 C.F.R. § 404.1567.

28

9

spine, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (*Id*.) He rejected Plaintiff's subjective pain complaints as not credible. (*Id*.)

The ALJ found that Plaintiff had a residual functional capacity to perform "sedentary" work with further postural and non-postural limitations. (A.R. 22.) The ALJ further found that Plaintiff could perform her past relevant work and, therefore, was not "disabled" within the meaning of the Social Security Act. (A.R. 22.)

### STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if it is free from legal error and supported by substantial evidence. *See* Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and it applies the appropriate legal standards. *See* Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that

detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary</u> <u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges three issues. <u>First</u>, Plaintiff contends that the ALJ's residual functional capacity finding is incorrect, because the ALJ did not accurately state the opinion of Dr. Doren, the non-examining medical expert, upon whom the ALJ relied in reaching his residual functional capacity finding. <u>Second</u>, Plaintiff contends that the ALJ improperly rejected evidence from both treating and consultative doctors in reaching his residual functional capacity finding. <u>Third</u>, Plaintiff contends that the ALJ improperly rejected Plaintiff's credibility. (Joint Stip. at 13.)  As the first two issues are closely related, the Court will address them together.

**A.   The   ALJ   Improperly   Evaluated   Plaintiff's   Residual   Functional   Capacity.**

According  to  the  ALJ's  residual  functional  capacity  finding, Plaintiff has the following limitations:

> [Plaintiff can] lift/carry up to 10 pounds occasionally and
> less   than   10   pounds   frequently   with   the   following
> nonexertional limitations:  she can stand for up to 4 hours in
> an 8-hour day with intermittent rest breaks; she can sit for
> 6 out of 8 hours, provided she be allowed to change positions
> afer 1 hour; she can climb ramps or stairs on an occasional
> basis; she may not climb ladders, ropes, or scaffolds; she can
> stoop, kneel, and crouch on an occasional basis and balance
> frequently; she cannot crawl; she cannot reach above head on
> a  constant  basis,  but  can  do  so  occasionally;  she  cannot
> engage in fixed cervical postures of extension, but flexion is
> okay, and she should change head positions about every 10 to
> 15 minutes.  (20 CFR § 404.1545.)

(A.R. 22.)

Plaintiff  argues  that  the  ALJ  erred  in  his  finding  as  to Plaintiff's residual functional capacity.  In finding that Plaintiff is capable of performing a limited range of "sedentary" work, Plaintiff contends that the ALJ only relied upon the first opinion of Dr. Doren given at the hearing, which was improper because Dr. Doren provided an

updated opinion following the hearing with a more limited residual functional capacity after having been provided with additional evidence. (Joint Stip. at 14.)   In addition, Plaintiff contends that the ALJ improperly disregarded the opinions of Dr. Shapiro, Plaintiff's treating physician, and Dr. Galleno, an examining physician, who both found more severe postural limitations than the ALJ.  (Joint Stip. at 13-14.)

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p.  When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).   Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989). *See also* 20 C.F.R. §§ 1513(a)(2), 416.913(a)(2)(licensed or certified psychologists are medical sources upon whose opinions a disability finding may be based).

Here, the Court first addresses whether the ALJ properly rejected the opinion of Dr. Shapiro, Plaintiff's treating doctor, whose opinions regarding Plaintiff's limitations are presumptively entitled to

13

controlling weight.   In rejecting the opinion of Dr. Shapiro, the ALJ stated:

> In reaching [Plaintiff's residual functional capacity finding], the Administrative Law Judge has given little weight to Dr. Shapiro's opinion that [Plaintiff] is permanently disabled and unable to sustain any type of work (exhibits 3F and 7F).   Dr. Shapiro's assessment of [Plaintiff's] work capabilities appears to be [based] in large part on [Plaintiff's] subjective complaints rather than objective medical findings.   Dr. Doren, a board-certified orthopaedic surgeon reports[,] that [Plaintiff] does not have MRI evidence of chronic lumbar disc disease or herniated disc; the disc protrusion seen on the 1994 MRI is quite small (Exhibit 10F/3).   Notably, Dr. Shapiro has not referred [Plaintiff] for an updated MRI.   Surely, if [Plaintiff's] back impairment were as severe as Dr. Shapiro reports, one would expect that he would refer her for further diagnostic testing.   In addition, except for minimal residual sensation loss to the left lower extremity, [Plaintiff] does not have any neurological deficits.   Notably, she does not have any motor loss in the lower extremities.   Moreover, [Plaintiff] does not have any motor loss or sensory deficits in the upper extremities.   In fact, Dr. Shapiro reported on October 26, 2001, that [Plaintiff's physical examination was unchanged from her prior evaluations and was the same as the evaluation of January 31, 2001.   This would indicate that [Plaintiff's] condition is

1    very stable.  Finally, Dr. Shapiro's own prescribed treatment

2    contradicts his opinion that [Plaintiff] is unable to perform

3    any work at all.

4

5    (A.R. 20.)

6

7        Dr. Shapiro's ultimate opinion as to Plaintiff's disability is not

8    binding on the ALJ.  *See* <u>Batson v. Commissioner</u>, 359 F.3d 1190, 1194-95

9    (9th Cir. 2004)("Although a treating physician's opinion is generally

10   afforded the greatest weight in disability cases, it is not binding on

11   an ALJ with respect to the existence of an impairment of the ultimate

12   determination of disability.")(quoting <u>Tonapetyan v. Halter</u>, 242 F.3d

13   1144, 1149 (9th Cir. 2001).  However, Dr. Shapiro's opinions regarding

14   Plaintiff's exertional and non-exertional limitations can only be

15   properly rejected for specific and legitimate reasons.

16

17       Here, the ALJ erred in rendering Plaintiff's residual functional

18   capacity finding, because he did not provide specific and legitimate

19   reasons for rejecting the exertional and postural limitations found by

20   Dr. Shapiro.  The ALJ primarily brushed aside Dr. Shapiro's limitations

21   as based on Plaintiff's subjective complaints.  Because the record

22   contains objective evidence, including x-rays and MRIs demonstrating a

23   basis for Plaintiff's claimed cervical and lumbar impairments (*See* A.R.

24   219, 169, 170, 252, 253), it was error for the ALJ to disregard Dr.

25   Shapiro's assessment of Plaintiff's limitations for that reason.

26

27

28                                      15

In addition, it was improper for the ALJ to reason that Dr. Shapiro's "failure" to obtain an updated MRI of Plaintiff's lumbar spine suggests that Plaintiff's limitations are not as significant as Dr. Shapiro found them to be.  In his January 18, 2002 report, Dr. Doren indicated that he needed more information, including a lumbar spine MRI, in order to determine the impact of Plaintiff's lumbar spine facet disease and pathology.  (A.R. 259.)  Especially in light of Dr. Doren's report expressing the need for an additional MRI, the ALJ should have ordered that Plaintiff obtain such an MRI before rejecting Dr. Shapiro's opinions regarding Plaintiff's limitations as not based upon sufficient objective testing.  The Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel.  Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993); 20 C.F.R. § 416.912(e)(duty to re-contact treating physician); see also 20 C.F.R. § 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

The ALJ also mischaracterized the findings set forth in Dr. Shapiro's October 26, 2001 report as showing that Plaintiff's condition was "very stable."  (A.R. 20.)  While Dr. Shapiro found that Plaintiff's condition was "unchanged" from his previous examinations (A.R. 236), Dr. Shapiro had previously found in his July 26, 2000 and January 31, 2001 reports that Plaintiff's condition had deteriorated to a point where Plaintiff was "disabled."  (A.R. 188, 191.)  Contrary to the ALJ's suggestion, Dr. Shapiro's October 26, 2001 report, read in connection with his prior reports, indicates that Dr. Shapiro concluded that

1    Plaintiff continued to be disabled and that Plaintiff's condition had

2    effectively reached bottom.   Accordingly, the ALJ's rejection of Dr.

3    Shapiro's  opinion  constitutes  reversible  error,  and  the  finding

4    regarding Plaintiff's residual functional capacity must be reevaluated.

5

6        In rejecting Dr. Galleno's residual functional capacity finding,

7    the  ALJ  noted  that  Dr.  Galleno  provided  two  conflicting  opinions

8    regarding Plaintiff's exertional limitations.   Specifically, in his

9    October 29, 2001 report, Dr. Galleno noted that Plaintiff cannot carry

10   over *five* pounds, and in a corresponding October 29, 2001 Multiple

11   Impairments Questionnaire, he stated that she could lift and carry up to

12   *ten* pounds occasionally.  (A.R. 19, 226, 229-30.)  However, given that

13   this is merely a slight inconsistency in Dr. Galleno's findings that he

14   made on the same day, the ALJ should have further developed the record

15   by re-contacting Dr. Galleno to clarify his opinion as to Plaintiff's

16   physical limitations instead of simply rejecting Dr. Galleno's opinion

17   regarding Plaintiff's residual functional capacity.   *See* Brown v.

18   Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an

19   affirmative duty to develop the record, even if the claimant is

20   represented by counsel); Thomas v. Barnhart, 278 F.3d 947, 956-57, 959

21   (9th Cir. 2002)(requirement in 20 C.F.R. §§ 404.1512(e), 416.912(e) that

22   the Commissioner re-contact treating sources is triggered where the

23   information  from  the  treating  sources  is  inadequate  to  make  a

24   determination regarding disability); *see also* 20 C.F.R. §§ 404.1519a(b),

25   416.919a(b)(listing situations requiring a consultative examination,

26   such as a conflict, inconsistency, ambiguity or insufficiency in the

27   evidence).

28

Furthermore, the ALJ erred with respect to the opinions of Dr. Doren. Even assuming that the ALJ had properly rejected Dr. Shapiro's and Dr. Galleno's opinion in favor of Dr. Doren's opinion, the ALJ further erred by improperly failing to incorporate Dr. Doren's updated residual functional capacity finding. Plaintiff is correct that, in Dr. Doren's updated January 18, 2002 Medical Statement, Dr. Doren sets forth more limitations in his residual functional capacity finding than the limitations in the residual functional capacity he provided at the hearing. In particular, in his updated report, Dr. Doren found that Plaintiff was limited to "sedentary" work, and further postural limitations, including: standing and/or walking at least two hours in an eight-hour workday; sitting less than about six hours and periodically alternating sitting and standing; pushing and pulling limited in the upper extremities; occasionally climbing ramps and stairs, balancing, kneeling, crouching, and stooping and never climbing ladders, ropes or scaffold and never crawling; limited reaching in all directions, and avoiding strain or overhead lifting, and limitations in vibrations and machinery and heights. (A.R. 260-63.)

Although Defendant maintains that the ALJ found that Dr. Doren had previously concluded that Plaintiff could stand and walk for up to two hours, this is incorrect; the ALJ found that "Dr. Doren concluded that [Plaintiff] is limited to . . . standing for a total of 4 hours with intermittent breaks." (A.R. 19.) Because the several-hour difference in Plaintiff's standing, walking, and sitting limitations noted in Dr. Doren's January 18, 2002 bear upon Plaintiff's ability to perform work-related activities, the ALJ erred in stating that Dr. Doren's January

18

18, 2002 opinion "did not change significantly from the residual functional capacity testified to at the hearing." (A.R. 20.)

Clearly, the further limitations in Dr. Doren's January 18, 2002 report could impact the ultimate finding of disability. Notably, Dr. Doren found that Plaintiff could stand and walk at least <u>two</u> hours in an eight-hour day, and could sit for <u>less than about six</u> hours in an eight-hour day. Dr. Doren also found that Plaintiff had additional non-exertional and postural limitations than those found by the ALJ. (A.R. 260-63.) Moreover, Dr. Doren's comments in his January 18, 2002 report suggest the necessity for further testing, including an additional lumbar MRI, in order to assess the extent of Plaintiff's limitations. (A.R. 259.)

Accordingly, the ALJ's finding regarding Plaintiff's residual functional capacity finding, constitutes reversible error.

**B.** **The ALJ Improperly Rejected Plaintiff's Credibility.**

In order to properly evaluate the symptoms of pain, 20 C.F.R. § 404.1529(c)(3) explains:

Since symptoms suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or examining physician or psychologist, or other persons provide

1      about your pain or other symptoms . . . is also an important

2      indicator of the intensity and persistence of your symptoms.

3      . . . Factors relevant to your symptoms, such as pain, which

4      we will consider include: . . . (iv) The type, dosage,

5      effectiveness, and side effects of any medication you take or

6      have taken to alleviate your pain or other symptoms; . . .

7      [and] (vi) Any measures you use or have used to relieve your

8      pain or other symptoms (e.g., lying flat on your back,

9      standing for 15 to 20 minutes every hour, sleeping on a board,

10      etc.).

11

12 20 C.F.R. § 404.1529(c)(3).

13

14     Case law further provides that, once a disability claimant produces

15 objective medical evidence of an underlying impairment that could

16 reasonably be expected to cause some level of pain of the type which the

17 claimant alleges, the claimant's subjective complaints regarding the

18 severity of his or her pain may not be discredited based solely on a

19 lack of objective medical evidence to corroborate the allegations.

20 Tonapetyan, 242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345

21 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).  As

22 the Ninth Circuit has explained:

23

24      [A]n ALJ's finding that a claimant generally lacked

25      credibility is a permissible basis to reject excess pain

26      testimony.  But, because a claimant need not present clinical

27      or diagnostic evidence to support the severity of his pain,

28

1   *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)

2   (stating that "it is the very nature of excess pain to be out

3   of proportion to the medical evidence"), a finding that the

4   claimant lacks credibility cannot be premised wholly on a lack

5   of medical support for the severity of his pain.

6

7   <u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).

8   This rule is based on the recognition that pain is an inherently

9   subjective phenomenon, which cannot be objectively verified or measured

10  and varies significantly among individuals. <u>Bunnell</u>, 947 F.2d at 347.

11

12      Unless the evidence suggests affirmatively that a claimant is

13  malingering, the ALJ must provide clear and convincing reasons for

14  rejecting the claimant's excess pain or symptom testimony, such as

15  conflicts between the claimant's testimony and conduct, or internal

16  contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d

17  915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792.  In determining

18  whether a claimant's testimony regarding the severity of his symptoms is

19  credible, the ALJ may consider:  "(1) ordinary techniques of credibility

20  evaluation, such as the claimant's reputation for lying, prior

21  inconsistent statements concerning the symptoms, and other testimony by

22  the claimant that appears less than candid; (2) unexplained or

23  inadequately explained failure to seek treatment or to follow a

24  prescribed course of treatment; and (3) the claimant's daily

25  activities." <u>Smolen</u>, 80 F.3d at 1284.

26

27

28                              21

1    The Court will give great weight to the ALJ's credibility
2    assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);
3    <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that
4    the ALJ's credibility determination is to be given great weight when
5    supported specifically).   However, when an ALJ's decision rests on a
6    negative credibility evaluation, "the ALJ must make findings on the
7    record and must support those findings by pointing to substantial
8    evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th
9    Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the
10   ALJ's findings must be "sufficiently specific to permit the reviewing
11   court to conclude that the ALJ did not arbitrarily discredit the
12   claimant's testimony.")  When discrediting a claimant's testimony, it is
13   not enough for the ALJ to make only general findings; he must state
14   which pain testimony is not credible and what evidence suggests that the
15   complaints are not credible. *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688
16   (9th Cir. 1979).

17

18   In rejecting Plaintiff's credibility, the ALJ stated:

19

20   In assessing [Plaintiff's] residual functional capacity,
21   the [ALJ] has also considered [Plaintiff's] allegations
22   of debilitating pain and disabling functional limitations
23   pursuant to the law of the Ninth Circuit Court of Appeals
24   and Social Security Rulings 96-3p and 96-7p. [Plaintiff]
25   reports that she cannot sit, stand, or walk for more than
26   approximately 30 minutes to 1 hour at a time because of
27   neck and back pain (Exhibits 1E and 3E).  She also needs

28

1    help with heavy house chores, and, on bad days, she also

2    needs help showering and getting dressed (Exhibit 3E).

3    At the hearing, [Plaintiff] testified that she has good

4    days and bad days and has only two good days per week.

5    On bad days, she lies on the couch with a brick under her

6    neck, lifts her knees, and does this for 3 to 4 hours.

7    She testified further that she has neck and back spasms

8    nearly daily and cannot bend over to tie her shoes.  She

9    also has difficulty holding her neck in fixed positions

10   for more than ½ hour at a time.   For the following

11   reasons, the [ALJ] finds that [Plaintiff's] reports of

12   debilitating pain are not fully credible.

13

14   First, [Plaintiff] does not exhibit any atrophy, weight

15   change, or significant difficulty moving, which are

16   indicative of severe and disabling pain.  Second, except

17   for minimal residual sensation loss to the left lower

18   extremity, [Plaintiff] does not have any neurological

19   deficits.  Notably, she does not have any motor loss in

20   the lower extremities.  Third, [Plaintiff] does not have

21   any motor loss or sensory deficits in the upper

22   extremities.  Fourth, when [Plaintiff] saw Dr. Galleno in

23   October 2001, her gait was normal, and she had only

24   slightly restricted range of motion in the cervical

25   spine.  Fifth, [Plaintiff] has not been diagnosed with an

26   ongoing upper extremity impairment.  Sixth, Dr. Hsu found

27   no evidence of apparent radiculopathy (Exhibit 1F, p.

28

15).  <u>Seventh</u>, on January 18, 2002, Dr. Doren reported that there is no MRI evidence of chronic lumbosacral disc disease (Exhibit 10F, p. 3).

<u>Eighth</u>, [Plaintiff's] course of treatment has reflected a conservative approach. [Plaintiff] has seen a doctor only periodically for follow-up of her pain, she has rejected the recommended trigger-point injections, and she only takes her prescribed medications twice a week. <u>Ninth</u>, she has not had any recent surgical procedures, and surgery has not been recommended for her current neck and back pain.  <u>Tenth</u>, the medical records do not document a worsening in [Plaintiff's] condition.  In fact, even Dr. Shapiro reported in October 2001 that [Plaintiff's] physical examination was unchanged from prior evaluations and the same as his evaluation of January 31, 2001 (Exhibit 7F, p. 2).

(A.R. 20-21.)

To the extent that the ALJ's rejection of Plaintiff's credibility is based on a lack of a proper medical basis, such as sensory, motor, and neurological deficits in her cervical and lumbar spine described in the first seven reasons the ALJ provided, it is improper.  As detailed above, there is objective testing supporting Plaintiff's claimed neck and back impairments.  (*See, e.g.*, A.R. 219 -- June 18, 2001 x-ray of right knee showing that "joint space is slightly narrow"; A.R. 169 --

September 21, 1999 x-ray of left knee showing "slight narrowing of the medial joint compartment" suggesting mild osteoarthrtis; A.R. 170 -- March 24, 2000 x-ray of the lumbar spine compared with a November 10, 1994 lumbar spine x-ray and an August 31, 1994 cervical spine film, indicating "loss of the normal cervical lordosis"; "disc space narrowing and osteophyte formation at C4-C5, C5-6 and C6-C7 consistent with mild degenerative change"; and "diffuse disc space narrowing osteophyte formation consistent with mild degenerative change.") It is, of course, error to require a claimant to adduce objective medical evidence to support the severity of her asserted pain or symptoms. *See* Tonapetyan, 242 F.3d at 1147-48; Bunnell, 947 F.2d at 345; Fair, 885 F.2d at 601; *see also* Cotton, 799 F.2d at 1407 ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

In addition, the ALJ did not describe the record in a completely accurate manner in rejecting Plaintiff's pain/symptom testimony, with respect to the sixth, seventh, and tenth reasons he provided. Specifically, the ALJ cited the May 4, 2000 report of Dr. Shihyen Hsu, a pain management specialist at Kaiser, and noted that Dr. Hsu found that Plaintiff exhibited no radiculopathy. (A.R. 18.) However, a full review of Dr. Hsu's May 4, 2000 report shows Dr. Hsu stated that "there is no recent MRI and there is no apparent radiculopathy," but he noted March 2000 x-rays showing impairment in Plaintiff's lumbar and cervical spine. (A.R. 162-63.) Plaintiff told Dr. Hsu that she was managing her pain and declined to have a trigger point injection at that time, but would return on an as-needed basis. (A.R. 162-63.) Similarly, the ALJ mischaracterized Dr. Galleno's October 29, 2001 report. In this report,

1   Dr. Galleno reported that Plaintiff had a range of motion from 80 to 90

2   percent in her cervical spine, but he also noted that Plaintiff had been

3   diagnosed with cervical spondylosis and that a "cervical spine MRI done

4   in December, 1994, was consistent with severe stenosis from C3-C6, with

5   a small disc herniation on the left side at C6-C7." (A.R. 221-22.)

6   Furthermore, as noted above, the ALJ did not accurately state Dr.

7   Shapiro's reports.    While it is correct that Dr. Shapiro found

8   Plaintiff's physical examination "unchanged from prior evaluations"

9   (A.R. 236), he stated numerous limitations in his previous reports of

10  July 26, 2000 and January 31, 2001, as well as that Plaintiff was

11  disabled and unable to work.  (A.R. 188, 191.)

12

13       Further, the record does not reflect that Plaintiff's treatment was

14  "conservative," as the ALJ suggests in the eighth reason he provided.

15  (A.R. 21.)  Although the ALJ stated that Plaintiff only takes medication

16  twice a week, Plaintiff takes Flexeril and Darvocet, a narcotic muscle

17  relaxant, two times a day, in addition to Vicodin, a narcotic

18  painkiller, that she takes two times a week.  (A.R. 37-38, 140, 147.)

19  The ALJ's assertion in the ninth reason he provided, that Plaintiff's

20  claimed impairments had not required surgery, also is an improper basis

21  for a credibility rejection.   Certainly, a claimant's impairment need

22  not require surgical intervention for it to be considered disabling.

23  Even if the law so required, which it does not, Dr. Galleno reported

24  that Plaintiff has received physical therapy and trigger point

25  injections, and stated that Plaintiff "will probably require in the

26  future cervical laminectomy and decompression." (A.R. 221, 226.)

27

28

                                    26

1    Accordingly, on remand, the ALJ should ensure that the evidence of
2    record is accurately reflected in his findings regarding Plaintiff's
3    subjective pain and symptom testimony, and he must provide reasons, if
4    they exist, for discrediting Plaintiff's testimony that are "clear and
5    convincing" in accordance with the requisite legal standard.

6

7    **C.    <u>Remand Is Required</u>.**

8

9    Having found the ALJ's decision deficient, the Court must decide
10   whether to award benefits or remand for further proceedings.  Where, as
11   in this case, there are insufficiencies in the record, remand is
12   appropriate to allow the ALJ the opportunity to remedy such defects.
13   *See* <u>McAllister</u>, 888 F.2d at 603.

14

15                              **CONCLUSION**

16

17   Accordingly, for the reasons stated above, the denial of benefits
18   is REVERSED, and this case is REMANDED for further proceedings
19   consistent with this Memorandum Opinion and Order.  Judgment shall be
20   entered reversing the decision of the Commissioner, and remanding the
21   matter for further administrative action consistent with this Memorandum
22   Opinion and Order.
23   ///
24   ///
25   ///
26   ///
27   ///
28

1        IT IS FURTHER ORDERED that the Clerk of the Court shall serve

2   copies of this Memorandum Opinion and Order and the Judgment on counsel

3   for Plaintiff and for Defendant.

4

5        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7   DATED: March 30, 2006

8                                        _____/s/_____

9                                        MARGARET A. NAGLE
                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        28